## SHARTS v WARNER

Ohio Appeals, 2nd Dist, Montgomery Co

No 1376.   Decided June 4, 1936

Joseph W. Sharts, Dayton, for plaintiff.
Harry P. Jeffrey, Dayton, and Herbert D. Mills, Dayton, for defendants.

### OPINION

By BARNES, PJ.

The above cause is in this court on defendants' appeal from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

By agreement of counsel, the cause was submitted on the evidence presented in the trial court supplemented by an agreed stipulation to the effect that interest on all deposit accounts were last paid or credited by the Miami Savings and Loan Company as of June 30, 1932, and that all dividends on all paid up running stock accounts were last paid or credited as of June 30, 1931.

The bill of exceptions in case No. 1375 in this court between the same parties on proceedings in error, is accepted as the transcript of evidence in the instant case.

The plaintiff, Bessie B. Sharts, on October 6, 1933 filed her petition and on August 2, 1934, her amended petition, seeking an order of the court requiring the Superintendent of Building and Loan Associations, in charge of the liquidation of the Miami Savings and Loan Company, to recognize her claim as a preference over those of the stockholders, and so forth. The prayer of her petition also asked for a preference over those stockholders and all creditors who lent money to said association after it became insolvent and thereafter exceeded its borrowing power.

Answer was filed, denying the allegations of plaintiff's petition that she had ever held a deposit account, but, on the contrary, at all times had been and was a stockholder or shareholder in the Miami Savings and Loan Company.

The evidence presented is conclusive that the plaintiff, on November 25, 1927, made a deposit with the Miami Savings and Loan Company in the sum of $500.00, and the same was received by the Loan Company as a deposit account and pass book issued therefor in the name of Bessie B. Sharts, 45 South Willowgrove Avenue. The signature card and pass book bore number 34150.

Two weeks later, on December 5, 1927, the account was changed to a joint account, as follows: Bessie B. Sharts, 45 South Willowgrove Avenue, and Stanley R. Sharts, 45 South Willowgrove Avenue. The same number was carried in the joint account. Additional deposits were made from time to time, and the same carried under the same names and same number until the early part of 1930.

On or about May 27, 1930, the Miami Savings and Loan Company through its officers, without the knowledge or consent of the individuals holding deposit accounts, undertook to transfer all of such accounts to a stock account or running stock account. The number of plaintiff's joint account was changed to 22790.

Stanley R. Sharts died some time during the year 1930. Thereafter Bessie B. Sharts desired to have the account transferred to her name alone instead of continuing the same as a joint account. She presented herself at the place of business of the Loan Company and made known her desires. She was asked to sign a card, which, she says, was represented to her as being a signature card. It now develops that the same was a subscription card for fifty shares of stock. The full amount of her balance, to-wit, $4199.72, was transferred and she was given a pass book marked on the cover "Savings Account."

Thereafter, when the Loan Association went on notice, four different payments in small amounts were made to the plaintiff on her request. Two of the checks evidencing these payments were marked "Charged to running stock account," and the other two were marked "RS" which was explained to mean running stock.

Plaintiff testifies that nothing was ever said to her about changing her deposit account to a stock account; that at the time the card was signed, which purports to be a subscription for fifty shares of stock, she did not read it and was not able to do so by reason of not having her glasses with her; that she relied on the representation of the employe waiting on her (naming him) that it was nothing more than a signature card; that she never noticed or discovered the notation on checks that the amount was to be credited to running account.

The employe waiting on plaintiff was called as a witness, but did not deny or verify the statements of the plaintiff as to the conversation claimed to have been had with him at the time the transfer was made from the joint account.

It can serve no useful purpose in extending this opinion by a prolonged analysis of the testimony of the various witnesses. Suffice it to say that we have read and reread in an effort to arrive at a correct conclusion.

In considering this case we have in mind that other creditors and stockholders of this institution, not parties to this action, will be affected through a finding in favor of the plaintiff.

We also have in mind the principle of law that when parties sign papers, there is a presumption that the same have been read and understood before signing.

Throughout the state many controversies with Building and Loan Associations have finally landed in the courts. Each case must stand or fall on its own facts.

It may be expected that designing individuals will take advantage of the general feeling that may be existing against loan associations, due to the fact that they may not receive their money on demand.

In the instant case, without difficulty, we arrive at the conclusion that the plaintiff should be given relief. When it is conceded as a fact that the officers of the Loan Company, without knowledge or consent, transferred the deposit accounts to stock accounts, it differs very little from the action of the employe by subterfuge having the plaintiff sign a stock subscription when she desired nothing else but a transfer of her deposit account.

The situation differs very materially from an original transaction. From 1927 to 1931 the position of creditor and debtor was maintained. A creditor can not be changed to a stockholder without his or her consent.

A new customer coming into a loan association is in a very much different position. Under such a situation the parties are dealing at arm's length. In no sense is the

confidential relation existing as between banker and customer. If the Loan Association has three or more forms of account, the customer is presumed to make a selection. If there is only one form, for instance a stock account, the customer has a greater obligation to know and understand the form of security he or she is receiving.

We have been favored with the very able opinion of the trial court and find therein a very thorough and comprehensive analysis. We are so impressed with the correctness of this opinion that we adopt it line by line, and the decree of this court will be the same as in the court below.

Entry may be drawn accordingly and costs will be adjudged against the defendant.

Exceptions will be allowed.

HORNBECK and BODEY, JJ, concur.