## SCHULTHEIS v KROEGER et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1446. Decided April 18, 1938

C. J. Mattern, Dayton, Ralph Argabright, Dayton, for plaintiff-appellant.

Pickrel, Schaeffer, Harshman & Young, Dayton, for defendant-appellee, for motion.

## OPINION

By HORNBECK, J.

The above entitled cause is now being determined on plaintiff's appeal on questions of law and fact from a judgment of the Court of Common Pleas of Montgomery County, Ohio.

By stipulation the case is submitted in this court on the transcribed evidence taken in the trial court and none other.

Plaintiff's petition alleges that defendant William H. Kroeger, as superintendent of Building & Loan Associations of the State of Ohio, is in charge of the liquidation of The Mutual Home & Savings Association of Dayton, Ohio; that the defendant The Mutual Home & Savings Association is a corporation engaged in the process of liquidating its business and property under the supervision of the defendant superintendent; that plaintiff opened a deposit account with defendant asso-

ciation in the sum of $10.00 which at the time was evidenced by a deposit book, Number B7079. Plaintiff continued to make deposits from time to time, all of which would be entered on the pass book. In January, 1910, the deposits together with interest, amounted to the sum of $912.87, at which time the old deposit book was taken up and a new deposit book issued carrying the same number, to-wit, B7079. Thereafter deposits were entered in the new book until January 7, 1924, at which time the deposits together with the interest, amounted to $5077.02. And a new deposit book was issued, bearing the same number, to-wit, B7079. This book continued to be used until January 12, 1929, at which time the total amount of the deposits, together with interest, aggregated $9527.57; that the plaintiff on said date subscribed for ten shares of the running stock of said defendant Building & Loan Association, of the par value of $100.00; that the total purchase price of said running stock was $1000.00, which sum was paid out of the funds which she then had on deposit with the defendant association; that the plaintiff did not on said date, nor at any subsequent time, subscribe for more than ten shares of the running stock of the defendant association; that when she subscribed for said stock the defendant issued and delivered to her a new deposit book, Number A-63608-4, which said deposit book contained an initial entry, under date of January 12, 1929, in the sum of $9527.57; .that on the first page of said pass book appeared the following notation: "No. shares 10"; that after deducting the purchase price of said running stock, $1000.00, from the total amount of $9527.57, there should have remained a balance of $8527.57 in her deposit account; that without her knowledge or consent the defendant company transferred on its books and records said balance from a deposit account to a running stock account; that said transfer was made without any authority in law and that said transfer was and is wholly illegal and void; that plaintiff had not made any deposits to nor withdrawals from her deposit account and that there should now appear upon the books and records of the defendant association a deposit account in her name, showing a balance due her of $8527.57, plus whatever interest she may be entitled to under the constitution and by-laws of the defendant company from the 12th day of January, 1929.

The prayer of the petition asks that the court order and direct that the books and records of the defendant association be reformed and corrected by setting up a deposit account on said books and records in the name of the plaintiff, showing a balance due her of $8527.57, plus whatever interest she may be entitled to under the constitution and by-laws.

The defendant William H. Kroeger, Superintendent files no answer or other pleading. The sole and only answer is filed by the defendant The Mutual Home & Savings Association.

The answer contains three defenses:

The first defense in substance admits the formal allegations of the capacity of parties defendant, the opening of the accounts as alleged but does not admit the averment that there should have remained a balance of $8527.57 in her deposit account and denies all other allegations of the petition.

For its second defense the defendant association says that on the 12th day of January, 1929, plaintiff withdrew from defendant association the total amount of her deposit account, book B7079, in the sum of $9527.57, and on said date signed a subscription for ten shares of running stock in defendant association and that on the same day paid said association on said stock subscription the sum of $9527.57; said association thereupon issued to her a pass book evidencing said subscription, being book Number A-63608-4; that the records of said association then and at all times thereafter designated said account in its entirety as a running stock account under said number.

The answer further avers that the stock subscription, as signed by plaintiff, contained a recital that said running stock account was subject to the constitution and by-laws, rules and regulations of the association; also contains a provision by which the parties agreed to and authorized the increase of said shares from time to time, as provided for in the by-laws. Reference is also made to the provisions of the by-laws relative to running stock, which will later be set forth. It is further averred that:

"Said by-law entered into and became a part of plaintiff's contract of subscription for running stock of said association; that by reason thereof said subscription was automatically increased so as to become a subscription for shares of a face or par value in excess of said sum of nine thousand, five hundred twenty-seven dollars and fifty-seven cents ($9;527.57): That by reason thereof said sum of nine thousand,

five hundred twenty-seven dollars and fifty-seven cents ($9,527.57) became and was, in its entirety, a payment on running stock of defendant association.

"This answering defendant says that thereafter and up to and including July 1, 1933, plaintiff made payments from time to·time to defendant association which were credited to plaintiff's running stock account No. A63608-4 on the records of said association and in plaintiff's pass book bearing the same number; that during the same period plaintiff made withdrawals from time to time from said association which were charged against said running stock account No. A63608-4 on the records of said association and in plaintiff's pass book bearing the same number; that during all of said time, and at all times thereafter, the provisions of the by-laws of said association, above set forth, remained in full force and effect, whereby the various balances standing to plaintiff's credit during all of said time and up to the present constituted and do now constitute payments on a running stock account; that plaintiff's credit balance on said account is now eleven thousand, seven hundred ninety dollars ($11,790.00) whereby plaintiff is presently the owner of one hundred seventeen and nine-tenths (117.9) shares of the running stock of the defendant association."

The third defense of the defendant association's answer pleads an estoppel by reason of the knowledge of plaintiff of the by-law relative to running stock when she subscribed for shares of running stock of the defendant association on January 12, 1929, and knew that her subscription for running stock was automatically increased by virtue of said by-law so as to constitute a subscription for shares of said association of a face or par value in excess of the sum of $9527.57; knew that said account, No. A63608-4, was a running stock account in its entirety; knew that all payments on or withdrawals from said account after the said 12th day of January, 1929, and up to and until the present time constituted payments only and withdrawals from said running stock account in said association; knew that at all times after January 12, 1929 she was designated on the records of said association as an owner of running stock for the full amount of her credit balance from time to time, as shown by the records of the association and by her pass book; knew that she was in fact the owner of shares of running stock in said association to the extent of such balance and not

a depositor; knew that at all times after January 12, 1929 and up to and including July .1, 1933, when payments of dividends on stock of said association ceased, she accepted and received dividends on the full amount of her credit balance on said account A63608-4, with full knowledge that the same were dividends and not interest on a deposit account; that upon numerous occasions during such period of time plaintiff withdrew in cash from said association the amounts of such dividends with full knowledge that the same were dividends on stock of the full amount represented by her total balance in said account A63608-4, and were not interest on any deposit account.

It is further averred that between the 29th day of September, 1933, and the 9th day of March, 1935,·the superintendent of Building & Loan Associations of Ohio notified all persons having claims against The Mutual Home & Savings Association whether as depositors or otherwise, to make sworn proof of claim for approval or rejection; that at no time during said period or subsequent thereto, has plaintiff ever made any claim as a depositor in said association, except as contained in her present action; that on April 15, 1935, pursuant to order of the Common Pleas Court, the defendant association paid a dividend of 100% to all known creditors whose claims had previously been filed and· approved.

The prayer of the answer asks that plaintiff's. petition be dismissed.

Plaintiff by way of reply denies that she paid the sum of $9527.57 to defendant company upon a stock subscription; that she knew that the deposit book issued to her, No. A63608-4, represented a running stock account and generally denies all allegations of the answer inconsistent with averments of the petition.

The only witness called on behalf of the plaintiff, other than herself, was George W. Kuhns, an assistant secretary and auditor of the defendant association. He had been connected with the association since 1923 and the only witness called for defendant was this same George W. Kuhns.

At the time of the trial in the lower courts plaintiff was an unmarried woman, sixty-three years of age. For thirty-three years she was an employee at the National Cash Register Company. The nature of her employment was not disclosed. She had not been working for a period of four years. Her first pass book was lost in the 1913 flood, as were the ledger accounts and records of the association. The date of the open-

ing of the account was agreed to by stipulation. This is not important, except as it explains the absence of the pass book and records at that time.

The records of the defendant association are regular. Their ledger sheets introduced in evidence disclose that prior to January 12, 1929 the account was a deposit account and on that date the entire amount was transferred to a stock account.

There are some pertinent parts of the direct evidence which are helpful. The plaintiff states that when she open- ██ ed hes deposit account with the company she talked to a Mr. Jones, acting for and on behalf of the company, who said to her that by "going that way" she would be safe and in case anything ever happened to the institution "I could put in my claim;" that she did not know the difference between dividend and interest and no officer of the institution ever explained that difference to her; that with the exception of the check made to her when she opened the account here in dispute, of the various amounts of money which were paid to her at different times, she was given a check in only one instance; that the designations fixed by the company of the various types of accounts, A, B, C and D, were never explained and were unknown to her; that she did not discover the meaning of such designations in her book until after the institution was in the process of liquidation, when she received the information from a broker who was interested in buying some stock that plaintiff's sister owned in another loan company and on that occasion he looked at plaintiff's books and explained to her that some of her books were marked "Stock" and others "Deposit Accounts", and that thereupon, for the first time the difference between interest and dividend was explained to her.

The witness for the defendant association says that the notation on the stub of the check, which was made at the time that the full amount of the deposit account of plaintiff was withdrawn, only shows an authorization for re-deposit, and that the association could then have done whatever the plaintiff requested to be done; but it does not appear that any instruction other than found on the stub of the check was given by plaintiff. What the association did with all but $1000.00, represented by the receipt which plaintiff signed was not to re-deposit but to open up a running stock account and in contradiction of its writ-

ten instructions, which its own agent prepared.

Coming to the question, whether or not the plaintiff is shown to have been properly put on notice that she was the holder of a running stock account in the sum of $9527.57, beginning January 12, 1929, dividend to begin January 1, 1929.

Looking first at the books which are in evidence, plaintiff's exhibits C, D, E and F. It is admitted that Exhibits C and D are deposit books. Exhibits E and F are stock payment books or running stock books. There is nothing on the backs of the books to differentiate them, save the difference in numbers and letter designation and on Exhibit F in print: "Running Stock" and "shares, 10." On the inside of the books is found, in Exhibits C and D, (deposit books) the heading: "Instructions to depositors", in E and F, (stock books): "instructions to members." Instructions Nos. 1, 2 and 3 are identical in all of the books. Instruction No. 4 is in all matters of substance identical in the books.

Instruction 5 in exhibits C and D provides:

"**Deposits,** as a general rule, may be withdrawn at any time without notice, but to protect the interest of depositors, members and borrowers, and to avoid the sacrifice of securities, notice of withdrawal may be required. Withdrawal notices of depositors and members will be filed in the order in which they are received and paid from the regular receipts of the association in the order filed. As to **interest rights,** a notice to withdraw shall be deemed the same as an actual withdrawal." (Emphasis ours).

Instruction 5 in Exhibit E (stock book) differs at the beginning thereof, wherein it states: "Money paid in on this book may be withdrawn, etc.," whereas the quoted part of instruction 5 reads: "Deposits * * * may be withdrawn, etc.," and the end thereof in Exhibit E (stock book) in the last paragraph says: "As to **dividend** rights, notice to withdraw shall be deemed the same as an actual withdrawal", whereas in all the other books, including Exhibit F (stock book) it states: "as to **interest** rights, a notice to withdraw shall be deemed the same as an actual withdrawal." So that to all intents and purposes instruction 5 was identical in Exhibits C, D, (deposit books) and F (stock book).

Examining the books further, we find no sufficient evidence to warrant the conclu-

sion that plaintiff should have noted the difference in the accounts by reason of the fact that when Exhibit E (stock book) was opened Exhibit D (deposit book) was not filled, for clearly Exhibit F (stock book) was opened at a time when Exhibit E (stock book) was not filled.

Looking at the deposits particularly: Beginning in November, 1926, in Exhibit B (deposit book) and from there on there is some form of notation after practically every deposit entry, many of which are illegible. It is in connection with these notations that the notations of payments of interest are found. In every instance where marked, the notation indicating interest is by the abbreviation, "int." In many places it is written in such a fine hand that it is difficult to read. It is notable that in one instance, namely, on July 1, 1925, the payment which no doubt was interest, is marked "div." Thus by the very book of the association, which it is admitted was a deposit book, there was an interchange of the notation "int." and "div.", in all instances properly meaning interest. Exhibit E, admittedly a stock book, has nothing whatever on it or in it to indicate to any person other than one informed upon the technical distinction between stock and deposit accounts, any difference between the account therein carried and the account carried in Exhibits C and D (deposit books) except that it is marked: "Number shares 10." Certainly, no knowledge of differentiation between a deposit and a stock account could be charged against the plaintiff by the designation of a different number of the account or by the prefix "A" instead of "B."

The entries in Exhibits E (stock book) are headed: "Payment; Withdrawal; Balance," whereas in Exhibits C and D (deposit books) they are: "Deposited; Withdrawn; Balance." The entries of deposits or payments, almost without exception, in Exhibit E (stock book) are followed by letter notations and among these notations and hardly to be distinguished from them, are the entries, "div." in many instances the "v" in the "div." is not legible. Certainly, there is little information of distinction between the payments of interest and dividends by the entries in the plaintiff's first three books, Exhibit C, D (deposit books), and E (stock book).

The fourth book, Exhibit F, is marked, "running stock." As we have heretofore indicated, the instructions inside are identical, insofar as the question here is concerned, with the instruction in the deposit books, Exhibits C and D. The entries in this book, Exhibit F by reason of the headings, "Withdrawals; Deposits; Balance; Dividend," clearly disclosed that credits were declared as dividends. But the plaintiff testifies and we must say from this record that she is telling the truth because everything indicates that she did not overstate her case, that when this last book was given to her she inquired of an officer of the bank why the change and he replied that her account was put into a smaller book because they were changing their system and it was easier and handier for women to carry the smaller book in their pocketbooks.

The payments to the plaintiff, after the institution went on notice, marked "div." in instances are not, in our judgment, sufficient to charge her with knowledge that such payments were changeable, in their entirety, to the total amount of the money which she had on deposit with the company. The books in themselves afford support for the statement of the plaintiff that she did not understand from them the difference between dividend and interest. She says that she looked when dividends or interest were paid to see that she was given credit but that she did no figuring. It is obvious that it would take an expert to mark the difference between the credit which would be given upon computation made as dividend or as interest.

It is not a part of the plaintiff's case to prove that any officer of the company acted in bad faith or with any intent to defraud the plaintiff in what was done. It clearly appears that the company believed that it was authorized to transfer all of plaintiff's deposit account upon her subscription for ten shares of running stock. It is also evident that without the benefit of defendant's interpretation of the by-laws there is nothing of record which discloses that the plaintiff instructed the association to transfer all of the money in her deposit account to a stock account. All that was done may well be reconciled with the theory that the plaintiff, being uninformed as to the procedure incident to placing her account in the proper status, merely signed a receipt. There is no showing, nor is it claimed, that any explanation was made to the plaintiff of the difference between a deposit account and a stock account, nor that she did more than sign the stock subscription card and receipt. The only stock for which the plaintiff signed was ten shares of running stock. It is true that a check was made for $9527.57,

being the total balance in her deposit account on January 12, 1929, but this check was not made payable to the plaintiff, nor did she endorse it, nor was there anything on it or on the stub of the check which would designate to her that she was changing the character of her account with the association in the full amount of the check. On the stub of the check, at the bottom of which the plaintiff signed her name, under the words: "Received payment," it says: "For all; No. Account B7079-4; $2527.57," and "redop. on A63608-4" It seems unnecessary to state that there is nothing on this stub or receipt which would inform the ordinary depositor that all of his money was being transferred from one type of account to another.

In the main plaintiff's case is based on the fact that she subscribed for ten shares of stock and no more. The query arises as to what right the association would have to transfer the entire account to a running stock account when she subscribed for ten shares only. We unhesitatingly say that it had no right, if no other inferences arise from other facts. Plaintiff's signature to the check stub acknowledging payment of her entire account for redeposit, together with the subscription card, raises the inference that this was done in order to divide the account, through which $1000.00 would be put in a running stock account and the balance remain or be placed in a deposit account. According to the evidence, running stock or certificates of stock paid dividends at the rate of 6% while deposit accounts or certificate deposit accounts paid interest at a rate not higher than 5% but it does not appear that this fact was made known to plaintiff.

It is the definite claim of Mr. Kuhns, who testified for the association and the loan company, that the mere fact that the plaintiff signed a subscription slip for ten shares only of running stock would necessarily authorize the placing of all of plaintiff's deposit account in a running stock account.

In the last analysis, the witness epitomizes the respective rights of the parties in this case. If he is correct in his answer, then the plaintiff is not entitled to recover. If he is incorrect in his conclusion, then she has gone a long way to establish the claim asserted in her petition. Here is found the gravamen of this case.

The Common Pleas judge resolved all other questions in the case in favor of the plaintiff but held that the company was authorized to transfer the full amount of plaintiff's deposit to a running stock account upon the authorization of the rules and by-laws in the light of her subscription for ten shares of stock. We might again state that if there was nothing in this record but the books of the association there might well arise a presumption that the transfer there appearing was regular or if it appeared or was claimed that this plaintiff had given any oral instructions at the time of the transfer of her deposit account to a running stock account, then, of course, the association would find support for the transfer. Upon the whole record it is highly probable that the transaction between the parties is found in the written evidence made up of the subscription of the plaintiff for ten shares of stock and the receipt which she signed on the stub of the check that was issued. This situation, then, makes determination of the rights of the parties rest upon a construction of the rules and by-laws, by the authority of which the association insists that it had the right to transfer all of plaintiff's deposit account to a running stock account.

By the subscription for the ten shares of running stock the plaintiff subjected herself to the constitution, by-laws, rules and regulations of the association. Her attention was specifically called to §18 of the by-laws of said association, examination of which discloses that it is not the section upon which the association, the defendant, now relies. The section referred to relates to paid up stock and not to an automatic increase in the value of running stock, as provided in §17.

The subscription expressly states that the plaintiff "subscribes for ten shares of running stock of $100.00 each"; that is to say, in the total $1000.00 worth of stock. If the defendant misinterpreted its authority under the by-law it acted in mistake of its rights. In our judgment the rule alone provided for no such action.

Let us look at the rule and interpolate its meaning in brackets:

"Sec. 17. Subscription may be made for one or more shares of running stock, upon which a payment of twenty-five cents or more (on each share) shall be made."

That is to say, that if at the time of the subscription a paid up stock certificate is not to be issued, then the number of shares subscribed is to be stated and in no instance would this number of shares be less than the total number subscribed on the

basis of one share for each twenty-five cents paid. Continuing with §17:

"Further payments (on the stock subscribed) may be made until the amount paid, together with the dividends credited, will amount to the face value of the stock subscription, (namely, in this instance $1000) at which time the member shall be entitled to the amount of said stock in cash, (namely, $1000), subject to the withdrawal rules of the association, or same may be transferred to Paid Up Stock Certificate.

"If said stock is allowed to remain as running stock, (in this instance $1000) then said stock subscription shall be automatically increased from time to time, (namely, as payments are made subsequent to and not contemporaneous with the payment of the money at the time of the subscription to the stock) by one or more shares, so that the face value of the shares ($1000) shall continue to be more than the total deposits and dividends credited thereon."

Why would an officer of the association have a depositor subscribe for ten shares of running stock, the face value of which is $1000.00, if at the time he knew that the depositor would place to the credit of his running stock account enough money to buy 95 shares of paid up stock or 384 shares if bought upon the basis of 25c, payment on each share subscribed? In the instant case the plaintiff had enough money to pay cash for ten shares of the value of $100.00 each or $1000.00 in the aggregate. This is the amount to which her book indicates she subscribed and this is the amount which should have been transferred to her stock book.

It follows that the plaintiff, having subscribed for ten shares, the number could thereafter be increased by the terms of §17 of the by-laws and money which she thereafter paid could properly be applied to her running stock account. This the plaintiff concedes by her action but maintains and in our judgment sustains the position that no authority appears which warranted the transfer of any of her deposit account over and above $1000.00. As well stated by counsel for the plaintiff, this rule respecting the right to increase shares of running stock is meant to operate in the future as related to the date when subscription to the stock is made.

It is urged by the loan company that the plaintiff should be barred because she did not file her claim with the superintendent within the time fixed by the original notice by publication to all persons having claims except stock accounts, which claims it was required should be filed with the superintendent not later than December 5, 1934.

This notice was given by virtue of paragraph 2 of §687-1 GC. The last paragraph of the section provides:

"Upon the expiration of the time fixed by the superintendent of Building & Loan Associations, for the presentation of claims, in the notice advertised as herein provided, he shall mail a similar notice to all persons whose names appear as creditors upon the books of such building and loan association who have not at such time presented their claims."

This part of the section of the Code was not met by the superintendent for the obvious reason that the name of the plaintiff did not appear as a depositor, i.e., a creditor of the loan company. If plaintiff's claim is well made here, she was such a depositor and before the statute can be given application full compliance with all of its terms must be met by the defendant superintendent.

Sec 687-16 GC provides that all claims for preference must be filed with the superintendent on or before three months after the last publication of notice required by the second paragraph of §687-1 GC and if not so filed the owner or owners thereof shall be forever barred from asserting the same in any manner as entitled to preference.

Whether or not plaintiff, in seeking to have her status established as a depositor, is thereby seeking a preference, we do not, nor are we required to say in this opinion. If she was a depositor at the time that the bank went into liquidation, she has the right to be restored to such status with the loan company.

The prayer of the petition is that the defendant be required to correct its books and records in the name of the plaintiff, showing a balance due her of $8527.57, plus interest from January 12, 1929. If she is entitled to this relief, then the question whether or not such action entitled her to a preference is not raised by the pleadings.

The grounds of estoppel and laches have heretofore been set out from the answer of the defendant loan association. It is our judgment that these defenses fail for

the reason that before either principle of law may operate it must appear that one acts with knowledge of one's rights.

There should then be credited to the plaintiff the amount of $8527.57 as a deposit account with the association and interest should be credited ▉▉▉▉ thereon in the proportion to which this sum was entitled and to that extent the prayer of the petition should be sustained.

Entry may be drawn accordingly.

GEIGER, J, concurs.
BARNES, PJ, dissents.

## DISSENTING OPINION

By BARNES, PJ.

It is with regret that I find myself unable to agree with my associates in the determination of this cause. Briefly I shall set forth herein the reasons for this dissent.

As I read the testimony, there is an absolute failure of proof to support plaintiff's action. It is the plaintiff's claim that on January 12, 1929, the defendant association wrongfully transferred the full amount of her deposit account to a running stock account.

In her petition she alleges that on this date she subscribed for ten shares of running stock of the face value of $1000.00. In the presentation of evidence it develops that she had no recollection of the transaction whatever. It therefore becomes apparent that the allegations in her petition are based on deductions from the written evidence in the possession of the building and loan association and not from any independent recollection of what transpired. Under the by-laws of the association, running stock accounts, in any amount, could be added to through additional deposits without any further subscribing and automatically the running stock would be increased by multiples of one hundred dollars and fractions thereof. Just because my associates cannot bring to their minds a satisfactory explanation as to why Miss Schultheis would only subscribe for ten shares if there was an understanding that the entire account was to be transferred cannot bear weight in my judgment. I am unable to see that there is any particular reason for signing up a subscription card at all except that it provides a conclusive record as to whether it is a running stock or deposit account. A subscription for ten shares provides a transfer just as effectively as any other amount. The fact remains

that the entire account was transferred and since the book was in Miss Schultheis' hands for a great number of years, she must have known it. Her pass book, taken out in October, 1930, bore the legend on the cover page "Running Stock". The last entry in this book is July 1, 1933. There is also entered in this book in type under the heading "Dividends" the amount of her semi-annual accumulations.

The evidence discloses that running stock accounts paid larger dividends than deposit accounts. The calculations from the entries in the books will show that plaintiff drew larger rates of dividends following the transfer to running stock accounts.

In the majority opinion it is stated that it is unnecessary to determine fraudulent conduct on the part of the association in making the transfer of the entire deposit to running stock. I am unable to see how they can arrive at a conclusion upon any other basis. If the representative of the association surreptituously transferred the entire amount to running stock account without having an understanding with Miss Schultheis so to do, this would be fraudulent conduct on their part. Fraud is not presumed.

There are many ways through which the transaction may have been closed thoroughly consistent with the subscription for ten shares. For instance, Miss Schultheis may have come down to the association with the idea of subscribing for only ten shares, but following her signing the subscription card she may have concluded that she might as well transfer the entire amount. The fact that running stock would bring larger returns may have moved her to so conclude. This procedure would have been in harmony with the procedure authorized under the by-laws.

Miss Schultheis through her petition admits that she, from time to time, made additional deposits to this running stock account without taking out any new subscription.

We must not lose sight of the fact that the burden of proof is upon Miss Schultheis to affirmatively show her right to the relief asked. In my judgment she has not presented any evidence in support of her contention. When she says she has no recollection of subscribing for the ten shares of stock or signing the check stub as receipt for transfer she thereby fails in her proof. The fact that she signed for ten shares but that the full amount was transferred would be corroborative if she presented any evidence of substance. It is

incorrect to say that because she only signed for ten shares that she might not, at the same time, have had a full understanding with the association to make the transfer for the full amount. The fact that the full amount was transferred is indicative that there was such an understanding. The account was in this form for four years or more before the association was taken over by the superintendent. During this period she received the benefits of the added income. It is too late and improper to draw inferences favorable to plaintiff in the absence of any proof.

## ON APPLICATION FOR REHEARING .

### Decided May 20, 1938

By THE COURT

There has been forwarded to us a memorandum designated as in support of application for rehearing. We also have motion for new trial and motion for rehearing, both of which are very short. The motion for new trial does not state any ground whatever under the statute as is required if a motion for new trial is necessary. The memorandum is directed to the application for rehearing as would properly be required.

We have examined the questions urged. It is suggested that the court should re-open the case and take further testimony, then re-submit the whole case to the court. There is no affidavit appended to either motion setting forth what the evidence which it is desired to produce would disclose, nor is there anything in the brief other than a mere statement of conclusion of what the evidence would consist. At the bottom of page 2 in the application it is stated that counsel do not think it necessary to cite authorities to show that deception is not to be presumed; that a person is bound by written signature and that a subscription to stock in a building and loan is bound by the constitution and by-laws of the association. We subscribe to every proposition in this sentence and affirmatively so held in our opinion.

It is asserted that the decision is emphatically contrary to **Kroeger, Supt. of Building & Loan Assns., v Brody, Trustee, 130 Oh St 559** and **Herman v Wagner, Supt.,** No. 1411 Montgomery County, this court. An examination of the Brody case discloses that the defense of the superintendent of Building & Loan Associations was that the president of the loan association with whom the plaintiff had made deposits had no authority to accept such deposits but as upon a stock subscription account. That was the very basis of the defense and the ground upon which the Supreme Court decided the case. In the instant case at no time has there been any suggestion that at the time the plaintiff deposited her funds with the savings association the officers of said association were not authorized to accept the deposits as distinguished from payment on subscription to stock. We have also examined Herman v Wagner, supra, and find nothing therein which in any wise conflicts with that which is said in the majority opinion in the instant case.

Of course we are not bound by the fact that there may be variation between our decision in this case and certain opinions in other cases in the Common Pleas Court of Montgomery County.

We are not committed to the proposition that in no instance will we after decision reopen a case and take further testimony. Such procedure, however, should only be adopted in exceptional cases and upon clear showing that the testimony which will be forthcoming if a new trial is granted will be of such probative effect as if true would in probability require a different determination of the cause. No such situation appears in the application for rehearing.

On the matter of deceit and the proof upon the record we would call attention to our opinion at the bottom of page 11 and page 12 wherein we say:

"It is not a part of the plaintiff's case to prove that any officer of the company acted in bad faith or with any intent to defraud the plaintiff in what was done. It clearly appears that the company believed that it was authorized to transfer all of plaintiff's deposit account upon her subscription for ten shares of running stock. It is also evident that without the benefit of defendant's interpretation of the by-laws there is nothing of record which discloses that the plaintiff instructed the association to transfer all of the money in her deposit account to a stock account."

At the bottom of page 13 and 14,

"We might again state that if there was nothing in this record but the books of the association there might well arise a presumption that the transfer there appearing was regular, or if it appeared or was claimed that this plaintiff had given any oral instructions at the time of the transfer of her deposit account to a running stock account, then, of course, the as-

sociation would find support for the transfer. Upon the whole record it is highly probable that the transaction between the parties is found in the written evidence made up of the subscription of the plaintiff for ten shares of stock and the receipt which she signed on the stub of the check that was issued. This situation, then, makes determination of the rights of the parties rest upon a construction of the rules and by-laws, by the authority of which the association insists that it had the right to transfer all of plaintiff's deposit account to a running stock account."

We then consider and discuss the meaning of the by-laws of the association, particularly §18 thereof, and hold against the interpretation put upon this section by defendants-appellees. This clearly was the determinative question in the case in in our view of the issues.

We are of the opinion that our former decision is correct. The application for rehearing and the motion for new trial will be overruled.

HORNBECK and GEIGER, JJ, concur.