## McFALL v WAGNER

Ohio Appeals, 2nd Dist, Montgomery Co

No 1512. Decided June 3, 1938

Froug & Froug, Dayton, for plaintiff-appellee.

George Nicholas, Dayton, for defendant-appellant.

### OPINION

By GEIGER, J.

This cause is in this court on an appeal

on questions of law and fact. Counsel have stipulated that the testimony adduced in the court below may be used as the testimony before this court.

The plaintiff in her amended petition states that the defendant in addition to doing general business as a Building & Loan Association was authorized to receive deposits and on December 4, 1930 she tendered to the agent of the defendant the sum of $6,000.00 to be placed on deposit in the deposit account, which amount was accepted and a pass book, No. 14546, issued to her; that the agent requested her to sign her name on a certain card for use of the defendant, which the agent designated as an identification card.

She alleges that she had been a stockholder of the defendant having a running stock account and that on September 6, 1929, she closed out said stock account and deposited the proceeds thereof in a Nashville, Tennessee, bank and that by reason of statements made by the agent of the defendant she was induced to withdraw the moneys on deposit in such bank and to open a savings deposit account with the defendant; that relying upon the representation of the agent she turned over to the defendant a sight draft for $6051.00 payable to the defendant association and it was agreed that the proceeds was to be a deposit account in the defendant's association; that shortly thereafter she was called to the office of the association and informed of the clearance of the draft and that it was necessary to sign an identification card so that an account could be properly opened and that a savings book was handed to her; she asserts that she is a creditor of the defendant in the amount of $6,000.00 and that it was not until some time after the superintendent took possession of the property of the defendant that she learned that she was carried on the books of the company as a stockholder. She denies that she ever subscribed for any shares of stock and states that she did not receive any notice that she was a stockholder and that the opening of said account was fraudulent and without the knowledge of the plaintiff; that she filed with the superintendent a proof of claim requesting that the superintendent reform and correct the records to conform with the fact, but that her claim was rejected. She prays that the defendant be ordered to reform their records and that her correct status be declared as that of a depositor and that a certificate of claim be issued.

To this petition an amended answer is filed by William H. Kroeger, Superintendent, admitting certain matters, including the payment of the $6,000.00 and that plaintiff received a pass book therefor; he denies that the company accepted said sum as a savings deposit account and denies that the company so entered the deposit.

It is alleged that the by-laws and constitution of the company did not permit it to accept savings deposit accounts or savings accounts of any kind; and said $6,000.00 paid by plaintiff on December 4, 1930, was a subscription for shares of the capital stock and was known as a running stock deposit account.

Defendant states that if it be found that the deposit was accepted as a savings account, that the plaintiff is estopped to claim that it was made as a savings account for the reason that on the day of the deposit the plaintiff entered into a written agreement wherein she subscribed for shares and subjected herself to the constitution of the company. The so-called subscription is set out to the effect,

"I hereby subscribe for 60 shares of stock subject to the constitution and by-laws and authorize the increase provided by certain sections."

and that on said date a pass book was issued as evidence of the deposit in the running stock account, said pass book being numbered 14546.

The answer sets up certain by-laws of the association in force at the time of the deposit and alleges that the plaintiff received a dividend on July 2, 1931 in the sum of $172.50 which was credited on her account and in the pass book and withdrawn and accepted as a dividend, which was shown in the pass book in the possession of the plaintiff.

A reply is filed in which the plaintiff denies that she entered into a subscription for 60 shares and asserts that if the superintendent has such subscription, same was obtained through fraudulent and undisclosed acts on the part of the defendant at the time of her signature; that she was not advised nor was there any agreement for the subscription of any shares, but that the signature was obtained through the representation that it was required for the purpose of identification; she denies that the by-laws did not permit the company to accept savings deposit accounts and asserts that if the by-laws do not permit acceptance, then the superintendent is estopped to deny such acceptance of de-

posits for the reason that the Board of Directors issued a pamphlet purporting to be the constitution, in which said deposits were permitted.

An answer of the Miami Savings & Loan Company of like purport is filed in which sections of the by-laws relating to stockholders are set out at length.

The cause came on to be heard and the court having decided in favor of plaintiff, motion for a new trial was interposed and overruled and the final entry made to the effect that it is ordered that the company, through its board of directors, issue to the plaintiff a certificate of claim as a depositor in the sum of $6000.00 and that the records of the company be reformed to show the status of the plaintiff as that of a depositor and not of a stockholder and that the plaintiff be paid on said claim in the same manner as all other depositors whose claims have been approved.

A proper notice of appeal on questions of law and fact was filed and the amount of the appeal bond was fixed in the sum of $1,000.00 which was given.

Helpful briefs have been filed and we have read the record which discloses evidence to the effect that the plaintiff began to transact business with the defendant in 1925 at which time she was a stockholder, which she continued to be until September 6, 1929 when she withdrew her money and closed her account, depositing the money in Nashville, Tennessee; that thereafter the defendant's agent solicited her to bring her money back and deposit it with the association, whereupon she stated that she did not desire to put her money into the association as a stockholder. She was informed that she could bring it back under a savings deposit account, which would be accepted by the bank; and upon being assured that the money would be on a deposit account, she made arrangements to withdraw the money from the Tennessee bank and was told that the matter would be handled according to her wishes. Afterwards, she was called to the office and informed that everything had been done and that she should get her passbook. She found that the account had been made up before she arrived at the bank, but that she was not satisfied and told the officer to change it and make it out as a deposit account, whereupon the officer gave her a "savings account" book and she stated "that is what I thought I had." She did not accept the first book, which was a stock account showing a deposit of $6048.00. She does not remember signing any papers.

The deposit book which she received. Exhibit 12, has on its face the legend "savings account" and is arranged to show the date of withdrawals, deposits, balance and interest or dividends. It discloses that on July 2, 1931, it is marked "Dividend June, $172.50" which is entered under the column "Interest or dividend" and was withdrawn. The account which had been opened before the plaintiff came to the bank was closed and a new account, the subject of the litigation, was opened. At this time the teller handed her a card which was designated by the teller as a signature card to identify the signatures. The two books, the book rejected by her and the one received by her were different. The former is not attached as an exhibit. Exhibit "B" discloses that she withdrew the $6048.00, $6000.00 of which she deposited as shown by the "savings account" book. Exhibit "6" on its face shows as a subscription for 60 shares. This is the card signed upon request for an identification signature and it is testified that the designation of number of shares, 60, was not inserted before signature. The bank memorandum for the receipt of the $6,000.00 bears the number of the pass book, 14546, with the letters "R. S." prominently displayed. The check by which the interest or dividend, as it might be, was paid in the sum of $172.50 bears no identifying mark as to wheher it was payment of dividend or interest and its payment was noted in the pass book "Exhibit 12" in one column as "Div. June" and in another column under heading "Interest or Dividend."

The defendant has introduced evidence to the effect that the green book marked "Savings account", defendant's Exhibit "12", is one that was issued to all those having deposits with the association after the installation of the cash register machines and that the book itself gives no indication that it is a savings deposit. It was also stated that deposit accounts had formerly been entered in red books. It is further stated by defendant that after May, 1930, a general order was given by the manager to all the tellers that after that day there would be no books issued covering savings deposits; that if a depositor insisted on making a deposit in a savings account, there was issued to such a depositor a certificate of deposit commonly known as a "C. D".

It is alleged in the answer that the by-laws and constitution of the company did not permit it to accept savings deposit accounts or savings accounts of any kind and to support this, testimony is offered to the

effect that after May 1930, such directions were given to the tellers. As contradicting this, the plaintiff has introduced what purports to be a copy of the constitution and by-laws issued to the patrons of the association. §15 of the by-laws provides generally that money may be received on deposit and if the depositor desires to make payment in installments, a pass book shall be issued on which deposits shall be receipted as made. Otherwise a certificate of deposit for the amount paid in shall be issued.

There is evidence to the effect that this by-law was rendered ineffective by the action of the officers, but it does not appear from the minutes of the corporation that there was any official modification or amendment of this by-law. We are, therefore, of the opinion that, under the constitution and by-laws of the corporation, there was unrevoked authority to accept deposits evidenced either by the pass book or by certificates of deposit. While the book issued and labeled "savings account" is such that it might be adapted to the use of a stockholder, yet it is equally applicable to an account carried as a deposit and we are of the opinion that the corporation can not deny the character of the contract simply by stating that it had no authority to accept money on deposit after May, 1930, when its unmodified by-laws permit it to do so.

The next defense of the corporation is that its records disclose the fact that the plaintiff was, as a matter of fact, a stockholder and that she subscribed for 60 shares of stock. As against this, the testimony of the plaintiff is positive and undenied to the effect that in 1929 she became dissatisfied with the running stock she then held as evidence by her old book, No. 23457, first issued to her in 1925 and that on September 6, 1929, this account was closed, by the withdrawal of accrued dividends of $148.61 and the sum of $7000.00. The account was then marked "closed" as appears from plaintiff's exhibit "5". Approximately six thousand dollars of this sum she deposited in a bank at Nashville, Tennessee. She testifies that after this withdrawal, she had a number of conferences with the officers of the bank who solicited her to return her deposit to their custody. She testifies that when she expressed dissatisfaction with her old relationship as a stockholder, she was assured that the money could be placed upon deposit without her becoming a stockholder.

Being finally persuaded to return the money, she made a draft upon her Nashville bank for $6005.36 and the same was cleared in the sum of $6048.00, the addition probably being for accumulated interest. When this arrived at the association, account No. 14022 was opened in the amount of $6048.00 with her knowledge. She testifies that when she ascertained that it was held in her name as a stockholder, she protested and that account was closed out under the date of December 4, 1930 and a new account, No. 14546, was opened on the same date, December 4, 1930 for the sum of $6000.00, at which time the book in question was issued with which she seemed to have been satisfied.

It seems to us that her actions in this matter, including her withdrawal of her balance in 1929 and her return of the money to the association on November 24, 1930 and her closing of the account, No. 14022, and the issuing to her of the book under the new number, 14546, and a new deposit of $6000.00, clearly evidence that she wished and intended to retire from her relations as a stockholder and to establish a new relation as a depositor.

Much is made by the defendant of the fact that she signed what now is claimed to be a subscription for 60 shares of stock on a card bearing the same number as her book, but the plaintiff asserts, as it seems to us successfully, that she was induced to sign this card by the statement by the officers of the bank that it was necessary as an identification signature. It clearly appears from the admissions of the officers that at the time of the signing of this card, the blank for the number of shares was unfilled and the insertion in such blank of the figures 60 was done by an officer of the bank after the signature had been secured simply as an identification signature.

Defendant's Exhibit "D" showing a deposit in her name of $6,000.00 on December 4, 1930 on the ticket marked "R. S." probably indicating running stock was not a matter of which she was advised and should not be held to make her a running stockholder against her frequently expressed dissatisfaction with that relationship.

It is further claimed that she is estopped from denying her position as a stockholder by the fact that an entry was made on the book in her possession under date of July 2, 1931 "div. June $172.50" and that she ac-

cepted this amount. While the book was in her possession after the entry was made the check by which she received the amount bore no identification marks by which she could determine that it was, as a matter of fact, a distribution of a. dividend to a stockholder and we do not feel that she should be estopped from still asserting the claim which she so frequently made, that she did not wish to be a stockholder in the company.

We are of opinion that she has clearly established her right to have the records of the company corrected so as to show that she is, as a matter of fact, a depositor and not a stockholder. The court below set out clearly the reasons for arriving at this conclusion and we concur in his reasoning.

Judgment for plaintiff as prayed for. Entry accordingly.

BARNES. PJ, and HORNBECK, J, concur.