## LURIE v MIAMI SAVINGS & LOAN CO

Ohio Appeals, 2nd Dist, Montgomery Co

No 1541. Decided March 8, 1939

McConnaughey, Demann & McConnaughey, Dayton, for appellant.

R. N. & N. K. Brumbaugh, Dayton, for appellee.

### OPINION

By GEIGER, J.

This case is in this Court on an appeal on questions of law and fact from the judgment of the Court below returned on the 6th day of September, 1938.

The plaintiff filed her petition on September 14, 1935 in the Court of Common Pleas in which she recited, in brief, as her first cause of action that she duly presented to and filed with defendant, William H. Kroeger, Superintendent of Building and Loan Associations of Ohio in charge of the liquidation of the Miami Savings and Loan Company, her claim for preference in the distribution of the assets of said association; that on the 18th day of June. 1935, the claim was rejected for the reason that the account is carried on the books of the Miami Savings and Loan Company as a running stock account.

For her second cause of action she alleges that on the 3rd day of January, 1928, she made a deposit in the defendant association as a savings deposit and the association issued to her its savings account passbook No. 34555; that from time to time she made deposits in said account and withdrew money from

same until June, 1929, at which time said savings account showed a balance of $1819.23; that said account was opened and carried in the name of Ruby Herman until the 18th day of July, 1929; that on the 10th day of June, 1929, she married Lurie and on the 5th day of July, 1929, being desirous of having her deposit account carried in her married name she notified the Association of her marriage and requested a change of name on her deposit account to her married name; that pursuant to said request, the Association on July 18, 1929, notified plaintiff that the name on the savings account No. 34555 had been changed to Ruby Herman Lurie and that said Association had issued a new savings account passbook No. 41568 in lieu of her former savings account passbook.

It is alleged that on June 30, 1930, the Association, in the process of installing a new bookkeeping system, cancelled passbook No. 41568 and issued to the plaintiff its savings account passbook No. 14012 in her then name; that ever since said plaintiff has been in possession of said passbook No. 14012 which has a balance as of July 15, 1931 of $1853.25.

She alleges that her account with the defendant, No. 14012, was carried on the books of the Association as a running stock account since the 18th of July, 1929; that on said date the Association, wthout her knowledge or consent, changed said account on its books of account from a savings deposit account to a running stock account.

She prays that her claim, in the sum of $1853.25, be allowed as a claim upon a deposit evidenced by a savings account and that the records of the Association be corrected to conform to the terms upon which she deposited the money, to-wit, upon a savings account deposit; that the rejection be cancelled and the defendant, Superintendent, be ordered to allow the claim as a deposit account and as a preference or priority in the distribution of the assets and for other relief.

The defendants, William H. Kroeger and the Miami Savings and Loan Company filed indentical answers admitting the formal allegations and that the plaintiff made an initial deposit with the association on January 3, 1928 of $386.00 and received therefor a passbook; that further deposits and withdrawals were made and that she was the owner of account No. 41568 and that thereafter she was issued a passbook No. 14012; admits that the present balance is $1853.25 and that said account is a running stock account and has been so carried since the 18th day of July, 1929.

As a second defense it is alleged that since July 18, 1929, plaintiff has been a stockholder and that on or about said date she duly executed a stock subscription card with the Miami Savings and Loan Company

As a third defense it is alleged the claim for preference or priority was presented to the then Superintendent more than three months after the last publication notice required by the second subparagraph of §687-1 GC. The prayer is that the plaintiff's petition be dismissed.

The cause was tried below and in this Court upon an agreed statement of facts and exhibits which are incorporated into the transcript of docket and journal entries, there being no bill of exceptions. Paragraphs 1, 2 and 3 of the Agreed Statement of Facts are in substantial corroboration of the plaintiff's petition. Paragraph 4 is an agreement that she signed subscription card No. 41568 for blank shares as shown by defendant's Exhibit 1. Said card reads in substance,

"I hereby subscribe for_____shares of stock of said company and authorize the increase of said shares as provided for in Section 12 of said by-laws."

Paragraph 6 of the agreed statement is to the effect that on May 25, 1930, the balance of $1599.52, appearing on running stock card No. 41568, was transferred by the company to a new ledger and identified as running stock account

No. 14012, which transfer was made at the time of the installation of the new accounting system.

Paragraph 7 identifies Exhibit 3 and Exhibit 1.

Paragraph 8 is to the effect that on May 1, 1935, plaintiff filed an affidavit in proof of claim with the Supterintendent as owner of account No. 41568; that said claim was rejected on June 18, 1935.

Paragraph 9 relates to the rejection and states that the claim as filed in the amount of $1853.25 is rejected and plaintiff hereby notified that it has been disallowed for the reason "account is carried on the books of the Miami Savings and Loan Company as running stock."

Paragraph 12 relates to membership in the corporation, providing for the different accounts according to the by-laws.

Section 13 of the by-laws relates to running stock and Section 15 provides that money may be received on deposit on such terms as the board may prescribe or as agreed to; that if the depositor desires to make payments in installments a passbook shall be issued, otherwise a certificate of deposit for the amount paid shall be issued. Such deposits shall be known as special deposits.

Section 16 of the by-laws provides for dividends on running stock and Section 17 provides that deposits shall draw interest at such legal rate as shall be fixed by the board of directors and interest shall be paid the same time as dividends.

Paragraph 14 of the agreed statement of facts is to the effect that the Association was taken over on April 18, 1933, for liquidation under §687-1 GC and that on October 20, 1936 the Superintendent turned over to the directors the liquidation of the company under §687-22a GC. It is further stipulated that the last day of publication of the notice of the Superintendent of his taking over of the company for liquidation was made on the 8th day of June, 1933.

## EXHIBITS

Other pertinent exhibits are contained in the affidavit of the plaintiff reciting the facts set out at length in her petition and asserting that on June 1, 1929, she had in the savings account, No. 34555, the sum of $1819.35; that she notified the company of her marriage in a letter requesting a payment of all over $1800 and a change to her married name. The Company answered on the 8th of July, 1929, enclosing a check for an amount which had been withdrawn from her savings account informing her that this would leave a balance of $1800. Other matters are referred to in the affidavit in relation to other exhibits. The letter of July 8th enclosed the check for the money withdrawn from her savings account, No. 34555, leaving a balance of $1800. The Company stated that it was enclosing a signature card which they would like to have her sign as Ruby Lurie, where indicated, and as it would be necessary to re-issue her account they would retain passbook No. 34555 in their files until they had received her new signature card.

Exhibit "C" is a letter, dated July 15, 1929, to the Association, stating:

"Enclosed please find signature card for my account. Kindly send me a duplicate sheet of my former deposits in old book, as I wish to keep same so you may stamp it as you see fit. Also inform me if interest on my new name will be as of July 1st."

Exhibit "D" is a letter from the Association acknowledging receipt of the amove letter and reads as follows:

"We would acknowledge receipt of your letter and attached signature card covering savings account No. 41568 which has been issued in lieu of account No. 34555 and showing proper credit of the transferred balance of $1800.00. Dividend on this amount will date from July 1. For our convenience we are enclosing the cancelled passbook."

A letter dated November 20, 1939, is an answer by the company to a request for payment of $366.25 and reads as follows:

"We are enclosing herewith our check for $366.25 which amount has been deducted from your savings account No. 41568 as requested in your letter of the 18th."

Upon hearing of the case the Court below on September 6, 1938 made an order to the effect that the Court finds, on the issues joined, for the plaintiff and against the defendant and the plaintiff is entitled to the relief prayed for in her petition and it was ordered that the claim filed with the defendants, in the sum of $1853.25, be allowed as a claim based upon a deposit of money evidenced by a savings or deposit account passbook and that the rejection of the claim by defendant is cancelled and that the defendant be ordered to establish and maintain the account, No. 14012, in the name of the plaintiff in the principal sum of $1853.25 on the books of the company as a deposit account with all the rights accorded by the company to the holders of deposit accounts.

We find no assignment of errors, but the brief of appellant sets out the claims of the defendants and recites the facts as agreed to and states that the running stock account, No. 41568, was set up after appellee had signed a subscription for stock and that she was thereafter credited with dividends and that at a later date the running stock was given an account number and that the appellee continued to make deposits and receive dividends. It is pointed out that she filed her claim with the Superintendent on May 1, 1935 nearly 6 years after she executed her written subscription of July 18, 1929 and that a period of four years intervened during which she could have withdrawn her money. It is asserted that she was not required to accept running stock and that it was apparent from the time she signed her

written subscription until the Association was taken over that she should have learned her status as a stockholder. It is pointed out that the subscription form could not have possibly misled her as it was clearly a subscription for stock and that there is no evidence to maintain her status as a depositor, but that on the contrary the instrument is such as to warn her not to accept the same if it was not what she wanted and it is insisted that she must have known that she was a stockholder.

This Court has had occasion to pass upon a number of like cases and reference may be made to the cases of **Bessie Sharts v Paul A. Warner, Supt., 23 Abs 88; Lillian McFall v W. Paul Wagner, 27 Abs 415 and Schultheis v Kroeger, 27 Abs 474.**

It will be observed that plaintiff in this case, after requesting that the change be made, received the letter from the Association, dated July 8, 1929, Exhibit "B", referring to her account No. 34555 as "your savings account" and stating that the company was enclosing a signature card and that as it is necessary to re-issue her account, "we will retain passbook No. 34555". She replied on July 15, 1929, enclosing signature card for her account and requested, "also inform if interest on my new name will be as of July 1st." To this a reply was made, Exhibit "D", acknowledging the receipt of the signature card covering **savings account** No. 41568 which has been issued in lieu of account No. 34555. Dividends on this account will date from July 1st.

On November 20, 1929, Exhibit "F", in reply to her request the company stated:

"We are enclosing our check which amount has been deducted from your savings account, No. 41568."

It is quite evident from the Agreed Statement of Facts and the Exhibits attached thereto that the plaintiff had no purpose or intention of changing her **savings account** into a running

stock account and from the letters received from the company, as above quoted, she had every reason to believe that her status as a savings account depositor was still maintained. She did not participate in any of the activities of a stockholder, as in the case of Mary Taylor v Dayton Building & Loan Association. We think her position falls within the judgment of this Court in the Sharts, McFall and Schultheis cases rather than within the reasoning of the Mary Taylor case.

## DID PLAINTIFF LOSE HER RIGHTS BY FAILURE TO FILE HER CLAIM WITHIN TIME?

Counsel for defendant, appellant cites §687-1 which provides what the receiver shall do upon taking possession of the business and requires him, under Paragraph 2, to cause notice to be given, calling upon all persons who have claims against the Association to present the same to him and make legal proof thereof at a time not later than the last day therein specified and that upon the expiration of the time fixed by the Superintendent for the presentation of the claims he shall mail a similar notice to all persons whose names appear as creditors who have not, at such time, presented their claims. It is asserted that the Superintendent called upon all persons who had claims to present the same not later than July 15, 1933 and that on May 1, 1935, almost two years after the date fixed by the Superintendent, appellee filed her affidavit in proof of claim and that the present action was commenced on September 14, 1935. The contention of the appellant is that the appellee has not filed her claim within the time prescribed by §687-1 GC and that she was therefore barred from setting up a claim during the time the Association was in liquidation by the Superintendent, under §687-1 GC, which liquidation has, been transferred to the directors under §687-22a.

We are of the opinion that §687-1 GC is a direction to the Superintendent as to the method in which ▮▮▮▮ he shall carry on his procedure in winding up the affairs of the company. He is directed to cause notice to be given, calling upon all persons who have claims to present them to him within the time named. It will be observed that if there be creditors who have not presented their claims after the expiration of the time fixed by the Superintendent, he shall mail a similar notice to all who appear as creditors. It seems to us that the latter provision, if there were nothing else in the statute, clearly demonstrates that this section is not in any way a statute of limitation against the presentation of a claim after the date named in the advertisement and we are not in sympathy with the claim of the appellant in this respect.

There is another section of the statute that is of entirely different nature, being §687-6, which provides that if the Superintendent doubts the justice of any claim he may reject the same and that a certificate of the rejection filed in his office shall be prima facie evidence of such rejection. The statute then provides that any person who shall deem himself aggrieved by the rejection shall bring an action against the Superintendent within three months after such rejection or refusal of allowance "or be forever barred from asserting same." The claim was rejected on June 18, 1935 and suit was instituted on September 14, 1935. The suit was instituted within three months after the rejection, although by a narrow margin. Had the plaintiff in this action failed to bring suit within the three months period provided by §687-6, she would have been forever barred from asserting her claim, but she did not do so and has a right to assert her claim and has a right to be restored to the position as a depositor as ordered by the Court below.

Judgment affirmed. Cause remanded for further proceedings.

HORNBECK, PJ, & BARNES, J, concur.