## STOMBERGER et v MIAMI SAVINGS & LOAN COMPANY

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1615. Decided July 22, 1940.

Scharrer, Scharrer, McCarthy & Hanaghan, Dayton, for plaintiffs-appellees.

McConnaughey, Demann & McConnaughey, Dayton, for defendant-appellant.

## OPINION

By GEIGER, J.

This matter is before this Court upon an appeal on questions of law and fact from an order of the Court of Common Pleas of Montgomery County.

The matter had its inception in a petition filed by plaintiffs, alleging that on the 20th day of October, 1936, the defendant was placed under the supervision of the Superintendent of Building and Loan Associations, under whose control it still remains; that on the 12th of April, 1917, the plaintiffs entered into a contract with the Loan Company to institute a joint and survivorship deposit account, the contract being as follows:

"It is hereby agreed that the deposits on this account shall be payable on the order of any one or more of us, and that notwithstanding the death or incapacity of any one or more of us said deposits shall be payable to any one or more of the survivors or survivor or order, notwithstanding such death or incapacity."

The same being signed by the two plaintiffs.

It is further alleged that on the 15th of April, 1926, plaintiffs reinstated the account and signed a new contract with the same or similar provisions and again stipulated that the deposits were in the nature of a joint survivorship deposit account; that they had deposited in the Association as of July 2, 1931, $2000.00, and that no part of said account has been withdrawn since said date and still remains on deposit; that on the 27th of January, 1935, they presented their affidavit in proof of claim to the Loan Company as provided by law, and on the 3rd of February, 1935, they received written notice advising that said affidavit and proof of claim had been rejected and that the defendant reinstated said account as running stock.

Plaintiffs pray that the defendant be required to allow their claim as a deposit account and as a general creditor's claim against the assets of the company in preference and prior to the claim of stockholders.

To this petition an answer was filed by the Miami Savings and Loan Company, making certain admissions as to the present operative conditions of the Miami Savings and Loan Company, and admitting that the plaintiffs filed a claim which was rejected, admitting that "the plaintiffs created a joint survivorship account".

It is averred that the Superintendent took possession of the property of the company and thereafter caused notice to be published, calling upon all persons who have claims against the Association to present the same and make legal proof that on October 20, 1936, the Superintendent transferred the further liquidation of the property of the company to the Association, and that since that date the Association has been in liquidation under §687-22a GC.

It is averred that on the 12th of April, 1917, the plaintiff signed and delivered to the Association a written subscription for running stock containing a clause in effect that "I hereby subscribe for fifteen shares of the capital stock of the Miami Loan & Building Association and agree to be bound by the Constitution", and that it is agreed that "the deposits shall be payable on the order of any one or more and notwithstanding the death of either." Certain sections of the by-laws are then quoted, and it is alleged that plaintiffs made payment upon the subscriptions and there was issued to them a running

stock pass book, designated "Running Stock Account, No. 13506", which remained in the possession of the plaintiffs until a date subsequent to May 20, 1930, when a pass book No. 20047 evidencing a credit of $2000.00 to their said running stock account was delivered to them; that from April 12, 1917, to January 3, 1924, the plaintiffs continued to make payment on said account, and that from time to time the Association declared dividends that plaintiffs knowingly assumed the status of and have continued as shareholders of the Association since the 12th of April, 1917.

The defendant prays that the petition may be dismissed.

Upon hearing the Court below found that the account opened in 1917, and renewed in 1926, was a joint and survivorship deposit account and not a subscription for fifteen shares of capital or running stock, and that the action is one to compel the recognition of a contract, and that if any period of limitation applies it is a ten year period beginning to run not earlier than July 3, 1930, or later than December 31, 1933. The ten year period of limitation had not run at the time of the beginning of this action and the plaintiffs were not estopped to assert the account as a special deposit account, and that the defendants were entitled to interest.

A motion for new trial was made and later overruled and the final judgment entered substantially as above recited, to which notice of appeal was entered within the statutory time.

It is agreed that the testimony taken at the trial of the cause in the Court below be made a part of the record.

We have carefully read the record, briefs of counsel and opinion of the Court below. The record clearly discloses to us that Mr. Stomberger, during the whole time that he ▮▮▮▮▮▮▮▮ ▮ had business with the Association, had a fixed intention of depositing his money in a savings deposit and an equally fixed aversion to becoming a stockholder; that whenever he detected any indication from the transactions he had with

the company that there was an attempt being made to change his relation from that of a depositor to a stockholder, he protested and stated emphatically that he did not wish to be a stockholder, but wished to continue his relationship as a depositor. We think this is clearly evidenced not only by the exhibits that are offered by the plaintiffs but also by those submitted by the defendant. There are a number of transactions testified to by Marie Campbell, formerly an employee of the Association, and we are quite frank to say that we are not favorably impressed with her testimony. Whenever the record disclosed something that might be indicative of relationship of depositor rather than stockholder, she seems to be quick to testify that such a mistake was made by the other girl employees. We can not give much weight to the entry of the word "Div." as indicative of a stockholder's relationship, where the same document repeatedly bears the abbreviation, "Int.", which is indicative of the relationship of a depositor and not that of a stockholder.

Examining the exhibits, we find that plaintiffs' Exhibit "A" consists of a detached printed agreement signed by the plaintiffs under date of April 12, 1917, providing that in case of death or incapacity of either of the two the payments shall be made to the survivor. This is pasted to a card bearing a statement that the parties subscribed for fifteen shares of the capital stock, on the reverse side of which appears the account number 13506 and the printed statement, "Running Stock". We do not find that there is any evidence indicating that the plaintiffs ever signed this card. They were interested in the survivorship agreement which was pasted on this card without their knowledge and retained in the bank and on which the records were kept.

Plaintiffs' Exhibits B, C, and D, concern a later statement as to the contract.

Exhibits B and C both distinctly bear the statement of a subscription for stock, B being for 15 shares, and C, having no designation of number. The plaintiff, Mr. Stomberger, testifies quite

definitely that the first two cards were presented by the officer of the bank to him for signature and that he refused to sign the same, when finally the blue card, Exhibit "D" was presented, which he did sign, and on which there also appears the signature of his wife. On the upper right hand corner appears in print the words "Joint Account", and on the lower left hand corner "Running Stock No. 13506", the latter being below the signature. We are not impressed with the claim that that was the signature for running stock. If it had been the signature for running stock such a legend would have appeared upon the card. It, however, relates to joint accounts and the entry opposite the phrase "Running Stock No. 13506" was not made by the depositor and there is no evidence that it ever came to his attention.

Defendant's Exhibit 1 is a card bearing the number 13506 and the statement, "No. shares, 15", upon which the account was kept until January 2, 1930. On this account there appears almost with equal frequency the statement of amounts credited as "In." or "Dv." The interest rate and the dividend rate for that period were the same. We are of the opinion that this record was a private record kept by the bank and is not expressive of the contract existing between the depositor and the bank. Defendant's Exhibit 2 is a card carrying No. 20046 and also bearing the No. 13506, but not having any signature by the plaintiff. There is on this card a column devoted to "Dividends". This card is a record of the bank and not expressive of the contractual relation. There are also exhibited by the defendant certain receipts, eleven in number, most of them being for $60 and others for $50. A certain number of them have the statement, "The above amount has been charged to my running stock account No. 20046". Others have the statement, "The above amount has been charged to my account No. 13506" with no reference to a "running stock account". Of the former form there are two receipts for the year 1930 and 1931. Of the latter form, there are nine extending in time from 1925 to January 2, 1930. If any weight is to be attached to these receipts, it largely predominates in favor of the claim that the account was a deposit and not a running stock account. The plaintiff states that he protested this form of receipt with the statement to the officials that he did not have a stock account, and testifies that the same receipt was given by them to all of the depositors or stockholders. The plaintiff also relates an incident in which one of the clerks of the bank told him that he had a stock account and upon his protesting that he did not, the Clerk went to the record vault and there found the blue card which now appears as Plaintiff's Exhibit "D", and reported back to him that he was correct in stating that he was a depositor and not a stockholder.

Plaintiff's Exhibit "E" is a pass book of The Miami Savings & Loan Company, issued to the plaintiffs, numbered 20046, with a notation 13506. There is no date of issue upon this pass book nor any designation as to whether it be a running stock or a deposit book. In the last column appears the words, "Interest or Dividend", below which certain sums are credited without designation as to whether they be interest or dividend. On the outside cover, in gilt letters appears the statement, "Savings Account". If that notation has any value it is in the especial fact that it is a savings account and not a running stock.

Another book that had been previously issued, concerning which the plaintiff, Mr. Stomberger, testifies that it was a savings account which was surrendered by the plaintiff when the new book was issued and concerning which there is no other evidence.

Much is made of the fact that the plaintiff Mr. Stomberger had opportunity to know that the bank regarded him as a stockholder. We do not think it is of consequence as to how the bank may have regarded him. The real question is, what was his contractual relation with the bank. We are of the opinion that when he opened the bank account he opened it as a depositor and that so far as his contract was con-

cerned he was a depositor and continued to be such. The treatment of his account by the bank could not in any way deprive him of such contractual rights as he had.

Another matter. that impresses us much is the fact that the plaintiff, Mr. Stomberger, has testified definitely as to certain transactions he had with certain of the employees of the bank. They are not presented as witnesses although so far as we know they were available at the time. If the plaintiff testified falsely it was the duty of the defendant to produce the evidence to that effect. We are not prepared to say that in a case similar to this, it is necessary for the plaintiff to establish his claim by "clear and convincing evidence". He is not endeavoring to establish fraud or the fact that he was under misapprehension when he signed the contract and that the contract should, therefore, be reformed. He simply relies upon his contract, gives the evidence showing that that was the contract into which he and the Association entered, and we hear nothing to the contrary except the inferences that are sought to be drawn from the way in which the bank kept its books and the notations which it made upon its private record.

This Court has heard many cases in reference to claims made and denied that one was or was not a stockholder but' was in fact a depositor, and we are free to say that in no case that we have heard have we been as completely satisfied of the righteousneses of the plaintiff's claim. Whatever suspicion may have arisen was grounded upon the acts of the Association without the knowledge of the plaintiff or in the event it was with his knowledge it was against his protest.

### STATUTE OF LIMITATIONS

We see no pertinency in plaintiff's claim that the statute of limitations bars this action. If it were an action to reform a contract, or to establish fraud, there might have been something in the claim, but it is simply an action upon a contract in the method prescribed by the statute after the claim had been rejected.

We think the Court below correctly sensed the situation and that his opinion was correct.

Judgment of the Court below affirmed. Cause remanded.

HORNBECK, PJ. & BARNES, J., concur.