## PACEY v MIAMI SAVINGS & LOAN CO.

Ohio Appeals, 2nd Dist., Montgomery Co.

No. 1660. Decided Jan. 15, 1941.

Robert E. Brumbaugh, Dayton and George Nicholas, Dayton, for plaintiffs-appellees.

Mason Douglass, Dayton, for defendant-appellant.

## OPINION

BY THE COURT:

This matter is before this Court upon review on questions of law and fact from a judgment of the Court of Common Pleas of Montgomery County, Ohio, in favor of the plaintiffs.

The plaintiff, after formal allegations, states that on October 2, 1930, he entered the office of the defendant and tendered the sum of $1500.00 to be placed on deposit in a savings deposit account in the name of Lora Mae Pacey or James E. Pacey, trustees for James Joseph or Rose Ann Pacey; that the defendant accepted the sum and delivered a savings account book, No. 23310, and further the agent of the defendant requested plaintiff to sign his name upon a certain card designated as an identification card to identify the signature of the depositor. It is alleged that additional deposits were made to said savings account until the balance totalled $3517.00; that no withdrawals were made and that he is a creditor of the defendant in the above amount; that he has just now learned that such savings deposit account has been carried on the books of the defendant as a running stock account; that at no time did he subscribe for any shares of stock and did not authorize any person to enter any subscription for the same. He prays that the Company be ordered to reform its records and that the parties named as plaintiffs be declared in their correct status as that of depositors; and that a certificate of claim be issued in the sum of $3517.00 with interest from July 2, 1931, to be paid in the same manner as all other depositors. The petition is signed the 27th of April, 1939.

The defendant Company answers making certain formal allegations and admits that it received $1500.00 on October 2, 1930, on account No. 23310; that the plaintiff paid over various amounts upon said account and denies the other allegations. Defendant alleges that the Association was in the possession of the officers of the State and has been since October 20, 1936, in

liquidation under §687-22a GC; that plaintiff signed and delivered to the Company a written subscription for running stock bearing the statement, "I hereby subscribe for 36 shares of stock of Miami Savings and Loan Company, Dayton, Ohio, subject to the Constitution and By-Laws of said Association." There was also a signature making said account a joint account of the parties named as plaintiff. The answer sets out the constitutional provision to the effect that any person who subscribes for or becomes the owner of one or more shares of the capital stock of the Company shall be a member thereof and entitled to all the benefits and incur all the liabilities of shareholders. §13 is quoted to the effect that subscribers who do not pay the face value of their stock shall pay in certain installments per week. Such shall be known as running stock and when payments and the dividends shall together equal the face value a certificate of fully paid up stock may be issued or the holder may authorize the Company to increase the shares.

It is averred the plaintiff made withdrawals from said running stock account and that the Association declared dividends on said stock which dividends were credited to the said running stock account and became a part thereof upon which dividends were thereafter computed, paid or credited. It is also alleged that the action was not brought within the time limited for the commencement of such actions. It is further averred that the plaintiff knowingly assumed the status of, and as such has continued as a shareholder in said Association and accepted benefits accruing to holders of stock; that numerous other persons became shareholders; that the rights of others, shareholders and depositors have intervened subsequent to which intervention the plaintiff made payments to the Association on said running stock account.

On July 31, 1940, the cause was heard and the Court ordered. adjudged and decreed that the account No. 23310 is a deposit account and said account should be converted and reformed to the status of a deposit account on the records of defendant and that a certificate of claim issue therefor as of April 18, 1933.

Notice of appeal was given from this order on questions of law and fact and the cause is presented to this Court upon the testimony taken in the Court below.

This Court has had occasion to hear a number of cases wherein those appearing upon the books of the Association have sought to have their apparent status as stockholders declared to be that of a depositor, entitled to be treated as a creditor. The evidence in this case is much the same in general tenor as that in several of the cases heretofore decided by us and is generally to the effect that the plaintiff had been a depositor as a stockholder of running stock as evidenced by account No. 29493 in the Miami Loan and Building Association on an account beginning July 2, 1926, upon which there was a balance on May 1, 1930 of $1744.71; that the plaintiff becoming concerned as to the safety of such stock holdings, closed this account withdrawing $1744.71 which was placed in cash in a safety deposit box where it remained until the new account, the subject of the present controversy was opened under account No. 23310 on October 2, 1930, by depositing on that date $1500.00, which was a portion of the money withdrawn from the former account in May of that year and retained in a safety deposit box. There is the us-

ual variance in the testimony of the depositor and of the officer of the bank who testified. The plaintiffs claim that they made the positive statement to the bank officials in starting the new account that they did not desire running stock but a savings deposit and assert that the officers promised to secure this for them and that they did not know it was carried as a stock account until about the time of the filing of their petition.

On the other hand, it is asserted by the officers of the bank that the plaintiffs signed a stock subscription for 36 shares of stock and that the same was carried as a stock account from its inception in 1930 until the action was begun; that the account was active, having deposits and some withdrawals; that dividends were paid so that the plaintiffs were put upon notice that the account was carried as a stock account and that in spite of this they made no protest or objection. It is also urged that the statement of the plaintiffs that they withdrew from the old account $1744.71 is not correct; that this amount together with other amounts under various numbers was used to balance a loan of $20,000.00 in the name of Frank Pacey.

We do not discern that it makes any particular difference whether the money deposited on that account was new money or whether it was a portion of the ▓▓▓ money withdrawn from the former account. The question is whether or not it was deposited and held as a running stock account and not as a deposit account.

Defendant's Exhibit A is what purports to be a subscription by James Joseph or Rose Ann Pacey for 36 shares of stock signed by Lora Mae Pacey. Said card further contains a provision for joint deposit signed by James E. Pacey, trustee for James Joseph or Rose Ann Pacey, and also signed by Lora Mae Pacey. The plaintiffs assert that at the time they signed this card it was presented to them with the distinct and definite statement that it was an identification card necessary to be signed by the parties and that there were no share numbers entered upon the face of the card at the time of the signatures. The number 36 appears in ink off and below the line where it should properly have been inserted and is in figures and not written out as would have been more proper. This can be accounted for by the fact that the line where the number of shares might be written is fully occupied in typing in the names of the various parties interested in the account. The figure "36" may easily have been inserted after the card was signed, but the presumption should be entertained, if possible, that the bank was not tricking subscribers into the position of a stockholder where it had been instructed that the depositor wished to make a savings deposit and not subscribe for stock. We can not overlook the fact that the number "36" inserted seems to have no relation to the amount of the first deposit, which was $1500.00. The various deposits finally reached the amount of $3517.00, an amount more appropriate for a subscription of 36 shares than the $1500.00. Of course, this is not conclusive, as stock might well be subscribed for in a different number of shares than the number covered by the original deposit at $100 per share.

The book, No. 23310, bears upon its face "SAVINGS ACCOUNT". There is nothing by which the holder of such book ▓▓▓ may be advised or put upon notice that the book is, as a matter of fact, a run-

ning stock account, except a few pink slips indicating that there is a charge to dividends. This is quite different from the original book, No. 29493, issued on July 2, 1926 to James Pacey, Jr., which bears upon its face the legend, "RUNNING STOCK NO. 29493".

The parties have testified that they were familiar with the difference between a deposit and a stock subscription. The two books bear no suggestion that they evidenced the same character of transaction and if any inference could be drawn from the delivery to the depositor by the issuance of the second book, it was that there was a difference between the two and the old book being clearly for stock subscription, a comparison of the two might well advise the holder that there was now a different relation. Defendant's Exhibit F shows accounts kept by the bank in which there are various columns headed "Deposits - Withdrawals - Balance - Dividends - Trans. Account."

All the matters now in controversy have been covered by the various cases heretofore decided by this Court in reference to such deposits. **McFall, Plaintiff-Appellee v Wagner, Defendant-Appellant, 27 Abs 415** is quite similar although is not exactly the same facts. **Hetrick, Plaintiff v Kroger, Defendant, No. 1499,** Montgomery County, decision July 19, 1938 by Barnes, J.; **Ruby Herman Lurie, Plaintiff v The Miami Savings & Loan Company, Defendant,** Montgomery County, March 8, 1939, decision by Geiger, J.; **Stomberger, et al, Plantiffs v Miami Savings and Loan Company, Defendant,** Montgomery County, decision July 22, 1940 by Geiger, J., **(32 Abs 402)** and **Roehm, Plaintiff v The Miami Savings & Loan Company,** Montgomery County, decision November 29, 1940 by Hornbeck, PJ., **(33 Abs 123)** each treat with certain principles involved in the present case.

The case of Taylor v Dayton Building and Savings Association in which this Court refused to recognize the account as a deposit account but held that it was a stock account had many points of dissimilarity. It would be a useless repetition to go over the present case in detail, as that would be but an accumulation of arguments already advanced in the other cases cited.

We are of the opinion that the account should be established as a savings deposit account and the entry may be drawn to that effect, which is the holding of the Court below. If, however, the amounts paid as dividends exceed the amounts that should have been paid had the account been treated as a savings account, credit should be given for this in the establishment of the account as a savings deposit.

HORNBECK, PJ., GEIGER and BARNES, JJ., concur.